OPINION OF THE COURT
Richard B. Meyer, J.
Pretrial motion (CPL 255.10) by the defendant for relief in the nature of dismissal or reduction of an indictment, compelling discovery and/or a bill of particulars, preclusion and/or suppression of evidence, and other relief.
The defendant is charged by a one-count indictment with having committed the crime of criminal possession of marijuana in the second degree (Penal Law § 221.25), a class D felony. The charges arise out of an incident alleged to have occurred on or about May 24, 2013 in the town and city of Plattsburgh, Clinton County, when the defendant is alleged to have possessed more than 16 ounces of marijuana.
The defendant’s pretrial motion consists of a notice of motion dated August 16, 2013, and an affirmation of Dean C. Schneller, Esq., dated August 15, 2013 with exhibits A through G. The People oppose the motion by an affirmation of Douglas G. Collyer, Esq. dated August 26, 2013. Since the defendant has moved to dismiss the indictment for defects in the grand jury proceeding and insufficient evidence, the defendant’s motion to inspect the grand jury minutes is granted, and this court has reviewed the grand jury minutes in order to determine the issues raised.
*213 L
“[A]n indictment is presumed to be based on legal and sufficient evidence” (People v Bergerson, 17 NY2d 398, 402 [1966]; see also People v Howell, 3 NY2d 672, 675 [1958]). In determining the sufficiency of the evidence before the grand jury, including proof encompassing any requisite culpable mental state (People v Mayo, 36 NY2d 1002 [1975]; People v Lott, 104 AD2d 710 [3d Dept 1984]; People v Delameter, 96 AD2d 629 [3d Dept 1983]), the court must view such evidence in a light most favorable to the prosecution, and determine whether such evidence, if unexplained and uncontradicted, would constitute prima facie proof so as to warrant a conviction after trial (People v Swamp, 84 NY2d 725, 730 [1995]; People v Pelchat, 62 NY2d 97, 105 [1984]; People v Valles, 62 NY2d 36 [1984]; People v Dunleavy, 41 AD2d 717 [1st Dept 1973], affd 33 NY2d 573 [1973]). “In the context of the Grand Jury procedure, legally sufficient means prima facie, not proof beyond a reasonable doubt (cf. People v Fellman, 35 NY2d 158)” (People v Mayo at 1004).
“In determining whether the People have reached this stage, all questions as to the quality or weight of the proof should be deferred. In other words if the prosecutor has established a prima facie case, the evidence is legally sufficient ‘even though its quality or weight may be so dubious as to preclude indictment or conviction pursuant to other requirements.’ To further illustrate the point the Commission Staff noted that ‘evidence may be “legally sufficient” to support a charge although it does not prove guilt “beyond a reasonable doubt,” and for that matter, although it does not even provide “reasonable cause” to believe that the defendant committed the crime charged.’ (See Commission Staff Comment to Proposed CPL 35.10, now CPL 70.10.)” CPeople v Sabella, 35 NY2d 158, 167 [1974].)
A grand jury is empowered to indict a person for a crime only upon “legally sufficient evidence” (CPL 190.65 [1]), defined as “competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant’s commission thereof’ (CPL 70.10 [1] [emphasis added]). Thus, criminal trial rules of evidence are applicable to grand jury proceedings (see CPL art 60; People v Mitchell, 82 NY2d 509 [1993]) with limited exceptions, including but not limited to: the admission of certified official reports and records of publicly-employed experts, such as a “physicist, chemist, coroner or medical *214 examiner, firearms identification expert, examiner of questioned documents, fingerprint technician” (CPL 190.30 [2]) and others, including reports electronically transmitted (CPL 190.30 [2-a]); sworn statements by individuals reciting their ownership or possessory rights to real or personal property (CPL 190.30 [3] [a]-[d], [f]-[g]); sworn statements by dealers as to the value of specified property (CPL 190.30 [3] [e]); sex offender registration documents (CPL 190.30 [3-a]); videotaped statements of child witnesses (CPL 190.30 [4]); and certified business records relating to a person’s subscription to and use of communication services (i.e., telephone, Internet) and his/her financial transactions and accounts (CPL 190.30 [8]).
“New York State indictments must be based on competent evidence, meaning evidence not subject to an exclusionary rule, such as the prohibition against hearsay (Richardson, Evidence § 4, at 4 [Prince 10th ed]; see also, People v Oakley, 28 NY2d 309, 314)” (People v Swamp at 730). Hearsay evidence — generally, an oral or written[1] “ ‘statement made out of court ... offered for the truth of the fact asserted in the statement’ (People v Romero, 78 NY2d 355, 361 [1991], quoting Richardson, Evidence § 200, at 176 [Prince 10th ed])” (People v Goldstein, 6 NY3d 119, 127 [2005])—
“ ‘may be received in evidence only if they fall within one of the recognized exceptions to the hearsay rule, and then only if the proponent demonstrates that the evidence is reliable’ (People v Brensic, 70 NY2d 9, 14 [citing People v Nieves, 67 NY2d 125, 131]; see also, People v Brown, 80 NY2d 729, 734-735 [present sense impressions]; People v Brown, 70 NY2d 513, 518-519 [excited utterances])” (Nucci v Proper, 95 NY2d 597, 602 [2001]).
IL
With that backdrop, review of the minutes of the grand jury proceeding reveals that the evidence before the grand jury *215 consisted of the testimony of a member of the City of Plattsburgh Police Department assigned to the Drug Enforcement Task Force, and seven photographs which were marked as exhibits and received into evidence. In sum, the officer testified that a wiretap investigation of another individual identified the defendant as being involved in the drug trade in Plattsburgh, that a confidential informant possessed text messages from the defendant relative to the availability of marijuana, that during surveillance of the building in which the defendant had his apartment an individual was observed (by others) removing an item from the engine compartment of a vehicle and taking it into the building, and that execution of a search warrant at the defendant’s apartment resulted in over five pounds of marijuana being seized.
Much of the grand jury presentation consisted of inadmissible hearsay evidence: the testimony of the officer regarding the wire tap investigation on “an associate and business partner, per se, of Mr. Hardy” pursuant to an eavesdropping warrant, and that “during that wire tap investigation, there had been numerous text messages that we have intercepted identifying Mr. Hardy as an active participant in the trafficking of large amounts of marijuana from the [St. Regis Mohawk] reservation to the Plattburgh area and selling same in the Plattsburgh area.” None of those intercepted communications forming the basis for this testimony were placed into evidence before the grand jury, and this officer did not state that he overheard those conversations and identified the defendant as a participant.
The evidence of text messages received by a confidential informant from the defendant constituted inadmissible evidence. The officer testified that he developed a relationship with an unnamed confidential informant on May 23, 2013 and that on May 24, 2013 he took two photographs of the informant’s cell phone purporting to show text messages to and from the defendant and that informant. The officer testified that the photographs “truly and accurately depict statements from the Defendant, Jeremy Hardy, via text.” These photographs depict the name “Jeremy Hardy” with what appears to be four separate text messages, and the officer read them to the grand jury. No testimony was offered or elicited establishing that the officer was a participant in the text message conversations or witnessed the exchange of the text messages between the confidential informant and the defendant, or that the officer had any other personal knowledge that the text messages actually came from *216 the defendant. A sufficient foundation establishing the authenticity of this evidence before the grand jury was not established (see People v Agudelo, 96 AD3d 611 [1st Dept 2012], lv denied 20 NY3d 1095 [2013]; People v Pierre, 41 AD3d 289 [1st Dept 2007] [witness sent instant message to defendant and received a reply, and testified to defendant’s screen name]). In fact, there was no foundation for the admission into evidence of the recorded text message conversation (see People v Ely, 68 NY2d 520, 527 [1986]). The foundation could have been laid before the grand jury by the testimony of the confidential informant who, presumably, would have identified his phone and the contact information on his phone identifying the defendant’s cell phone number.[2] Also inadmissible before the grand jury was the officer’s testimony concerning his interpretations of these text messages, including but not limited to his testimony that in his “experience — the term native is a slang term for Native American, Native American Indian. It is commonly used in the local drug trafficking lingo to state a contact off the reservation.”
The officer’s testimony concerning what other members of the Drug Task Force observed while conducting surveillance is inadmissible evidence. At the time members of the task force allegedly observed the item being taken from the engine compartment of a vehicle and into the building where the defendant allegedly maintained his apartment, the testifying officer was not present as he told the grand jury: “That was another Task Force member. I was actually with the confidential informant at the time.”
Additionally, the evidence of the location of the defendant’s residence was inadmissible hearsay. The officer testified that he executed the search warrant at “118 Bridge Street, apartment B, in the city of Plattsburgh,” stating that “the listed resident and sole occupant is Mr. Jeremy Hardy,” the defendant. At no time does the officer relate to the grand jury the basis of his knowledge that such is the defendant’s residence, nor does he identify any record, document, or other item which “lists” the defendant as the resident and occupant of that apartment. *217 There was no evidence that the defendant was observed entering or leaving the apartment or the building, that he possessed keys to the apartment, that any of the utility bills for the apartment were paid by the defendant, or that any items or documents found in the apartment were in the defendant’s name (see e.g. People v David, 234 AD2d 787 [3d Dept 1996], lv denied 89 NY2d 1034 [1997]; People v Mejie, 186 AD2d 155 [2d Dept 1992]). This testimony is hearsay as it cannot be inferred from the officer’s testimony that he has any personal knowledge that the defendant resided there at that time.
The remaining evidence before the grand jury consisted of the officer’s testimony describing his actions in executing the search warrant, discovering the suitcase containing 10 ziplock bags of marijuana, and relating that the substance field tested positive for marijuana and had an aggregate weight of five pounds.
m.
“[N]ot every improper comment, elicitation of inadmissible testimony, impermissible question or mere mistake renders an indictment defective. Typically, the submission of some inadmissible evidence will be deemed fatal only when the remaining evidence is insufficient to sustain the indictment (see, People v Avant, 33 NY2d 265, 271).” (People v Huston, 88 NY2d 400, 409 [1996].) The question is whether the remaining evidence before the grand jury is legally sufficient to support the indictment here.
A prima facie case against the defendant under Penal Law § 221.25[3] requires that the competent evidence before the grand jury show (1) that the defendant possessed one or more substances containing marijuana; (2) that he did so knowingly and unlawfully; and (3) that the aggregate weight of the substance was more than 16 ounces (see CJI2d[NY] Penal Law § 221.25). As to the first element, since the defendant was not physically present when the search warrant was executed and the marijuana found, the People were required to present competent evidence that the defendant exercised dominion or control over the material found in the spare bedroom of the apartment, or in other words was in constructive possession of those substances.
*218 “In New York, the rule has long been that to support a charge that a defendant was in constructive possession of tangible property, the People must show that the defendant exercised ‘dominion or control’ over the property by a sufficient level of control over the area in which the contraband is found or over the person from whom the contraband is seized (see, Penal Law § 10.00 [8]; People v Francis, 79 NY2d 925; People v Pearson, 75 NY2d 1001 [evidence legally insufficient to establish defendant’s constructive possession of cocaine found in back room of grocery store in absence of evidence that defendant owned, rented or had control over or a possessory interest in store or room]; People v Tirado, 47 AD2d 193, affd on opn below 38 NY2d 955 [proximity of drugs in apartment and defendant’s control of premises support conclusion of constructive possession]; People v Diaz, 112 AD2d 311 [evidence that defendant instructed another to retrieve and sell cocaine to undercover officer sufficient to establish defendant’s constructive possession of cocaine]; People v Rivera, 77 AD2d 538 [defendant who commanded his brother to get a gun and pull trigger had complete dominion and control over gun]; cf., People v Patel, 132 AD2d 498, lv denied 70 NY2d 935 [in absence of any proof that defendant had authority over person in actual possession of gun, there is no constructive possession]).” (People v Manini, 79 NY2d 561, 573-574 [1992] [footnote omitted].)
“Proof of constructive possession may be shown circumstantially (People v Torres, 68 NY2d 677).” (People v Hyde, 302 AD2d 101, 105 [1st Dept 2003].) In People v Torres (68 NY2d 677, 678-679 [1986]),
“the proof showed that defendant, a habitual cocaine user, was a named tenant on the apartment lease in which the contraband was found; the doorman saw him 25-30 times in the month of the seizure; he had keys to the apartment; he left the apartment the morning of the seizure carrying a suitcase and leaving behind his safe, gun and other effects; when he arrived at a hotel in Puerto Rico he gave the apartment address as his home and called the doorman to ask if the marshal (who executed an eviction warrant) had ‘found anything.’ . . . [C]ir *219 cumstances such as those found here can provide a sufficient basis for a trier of fact to conclude that a defendant is guilty of constructive possession of contraband found within the apartment, though a defendant may be absent from the apartment under his or her dominion and control, or others have use of it (People v Robertson, 48 NY2d 993; People v Diaz, 34 NY2d 689).”
The only evidence here before the grand jury was the officer’s testimony that “the listed resident and sole occupant” of the apartment where the marijuana was found was the defendant. This evidence, notwithstanding its apparent hearsay nature, was legally insufficient at the grand jury stage to establish a prima facie case of constructive possession (see People v Brown, 188 AD2d 930, 931 [3d Dept 1992] [“In the absence of any competent evidence connecting defendant with apartment No. 23, the People have failed in their burden of establishing defendant’s dominion and control over the area in which the contraband was seized”]; see also People v Hill, 182 AD2d 1087 [4th Dept 1992], lv denied 80 NY2d 895 [1992] [People failed to present legally sufficient evidence to connect defendant with apartment where contraband discovered]; People v Scott, 75 AD2d 858, 859 [2d Dept 1980] [“Absent evidence that defendant was fin close proximity’ to the cocaine or that defendant exercised dominion and control over the premises, the proof adduced at the Grand Jury did not sufficiently establish that defendant possessed the cocaine or drug paraphernalia”]). In addition to failing to prove the apartment was the defendant’s, the People failed to submit any proof before the grand jury showing that the defendant was ever seen in the apartment, or coming and going from the apartment, or that his clothing and personal effects were found there.
The evidence was also insufficient to establish that the defendant acted with the culpable mental state, namely, “knowingly.” “A person acts knowingly with respect to conduct or to a circumstance . . . when he is aware that his conduct is of such nature or that such circumstance exists.” (Penal Law § 15.05 [2].) Here, the text message evidence, including the officer’s testimony relating thereto, is inadmissible hearsay absent a foundation for authenticity, which was lacking here. There was no other evidence tending to establish that the defendant had any knowledge of the marijuana in the apartment where the search warrant was executed, particularly since there was no proof it was the defendant’s apartment. Moreover, the evidence *220 was insufficient to entitle the People to the presumption of “knowing possession” (Penal Law § 220.25 [2]) since the marijuana was in a closed suitcase and not in open view in the spare bedroom, and there were no other circumstances proven to the grand jury which would raise such a presumption (see e.g. People v Mayo, 13 NY3d 767, 768 [2009]; People v Martinez, 83 NY2d 26 [1993]; People v Kims, 96 AD3d 1595 [4th Dept 2012]).
The defendant’s motion to dismiss the indictment must be, and hereby is, granted and the indictment is dismissed for insufficient evidence (CPL 210.20 [1] [b]). The People did not request in their papers opposing the motion the authorization to resubmit the charge to a new grand jury.
“CPL 210.20, governing judicial dismissals, provides without qualification that where a court dismisses an indictment based on insufficiency of the evidence it ‘may, upon application of the people, in its discretion authorize the people to submit the charge or charges to the same or another grand jury’ (CPL 210.20 [4]).” (People v Morris, 93 NY2d 908, 910 [1999] [emphasis added].)
Thus, the indictment is dismissed without prejudice to the People’s application for such authorization. Pending such application or further order of this court, the defendant shall be and remain released on the existing posted bail of $20,000 cash or $40,000 bond in accordance with the securing order issued simultaneously herewith (CPL 210.45 [9]).

. Hearsay
“ ‘means not only an oral or written expression but also nonverbal conduct of a person intended by him as a substitute for words in expressing the matter stated’ (Comment, Uniform Rules of Evidence, rule 63), and follows Wigmore in defining hearsay as an extrajudicial statement which is offered to prove the truth of the matter stated (5 Wigmore, Evidence [3d ed], § 1361; see, also, Richardson, Evidence [Prince — 10th ed], § 200; McCormick, Evidence [2d ed], § 245, p 584; 1 Mottla, New York Evidence, § 187; Morgan, Hearsay and Non-Hearsay, 48 Harv L Rev 1138, 1144)” (People v Caviness, 38 NY2d 227, 230 [1975]).

. The importance of a foundation for admission of text messages is readily apparent from the ease with which a cell phone can be set up to falsely indicate that a message is from some individual other than the real sender. On your own cell phone, open your phone application, go into contacts, select a contact and edit the name by typing in “Carlos Danger” instead of that person’s real name. Save it, and send a text message to that friend. Any reply or subsequent text message received from that person will show up on your phone as being from “Carlos Danger.”

. “A person is guilty of criminal possession of marijuana in the second degree when he knowingly and unlawfully possesses one or more preparations, compounds, mixtures or substances containing marijuana and the preparations, compounds, mixtures or substances are of an aggregate weight of more than sixteen ounces.” (Penal Law § 221.25.)